PAT LUNDVALL (NSBN 3761)
KRISTEN T. GALLAGHER (NSBN 9561)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
lundvall@mcdonaldcarano.com
kgallagher@mcdonaldcarano.com

STUART NEWMAN (admitted *pro hac vice*)
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 885-1500
snewman@seyfarth.com

KAITLYN F. WHITESIDE (admitted *pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
kwhiteside@seyfarth.com

*Attorneys for Vectrus Systems Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VECTRUS SYSTEMS CORPORATION,<br><br>Petitioner,<br><br>v.<br><br>TEAMSTERS LOCAL 631,<br><br>Respondent. | Case No. 2:18-cv-01345-JCM-VCF<br><br>**PETITIONER'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION.

The Union has failed to overcome Vectrus' arguments that it properly preserved its ability to seek a judicial determination of arbitrability, that the Award fails to draw its essence from the collective bargaining agreement ("CBA"), that the Arbitrator lacked authority to regulate Vectrus' actions prior to its becoming a party to the CBA, or to modify the CBA to dictate the Company's hiring decisions, or that the Award violates an explicit, well-defined, and dominant public policy. For all of these reasons, and as described further below, the Award should be vacated.

II.    THE UNION HAS NOT OVERCOME THE NUMEROUS REASONS WHY THE AWARD SHOULD BE VACATED.

A.    **Vectrus Appropriately Challenged And Did Not Acquiesce To The Arbitrator's Jurisdiction.**

As the Union conceded in its Answer, Vectrus made it clear from the outset of the arbitration proceeding that it was challenging -- and not acquiescing to -- the Arbitrator's jurisdiction to decide the grievance. *See* ECF No. 1 (Petition), Paragraph 19; ECF No. 8 (Answer), Paragraph 19. The Arbitrator himself acknowledged the Company's arbitrability challenge. *See* ECF No. 1 (Petition), Exhibit A, p. 15 ("[T]he Company has raised a preliminary objection that the arbitrator lacks jurisdiction over the subject matter because its agreement with the Union was not effective until October 25, 2017"). The Union's contrary allegation in its Response is groundless.

The Supreme Court instructs that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Tech. Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).

Fundamentally, Vectrus did not agree to have the Arbitrator finally settle the issue of arbitrability, and nowhere explicitly waived its right to seek a judicial arbitrability determination. That ends the inquiry. Indeed, on its face, the question for decision which the Arbitrator himself addressed did not purport to resolve any threshold arbitrability dispute. *See* ECF No. 1 (Petition), Exhibit A, p. 2 - 3 ("The undersigned has determined that the issues to be resolved are as follows: Whether the Company violated the collective bargaining agreement when it determined which individuals to employ for its operations in positions covered by the agreement; if so, what is the appropriate remedy?"). Consistent with *First Options*, arbitrability properly is before this Court. *First Options* 514 U.S. at 946 ("On the record before us, First Options cannot show that the Kaplans clearly agreed to have the arbitrators decide (i.e., to arbitrate) the question of arbitrability… [M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point.").[1]

Along these lines, there simply was no agreement to arbitrate whether conduct occurring prior to October 25, 2017 somehow could violate a labor agreement to which Vectrus was not even a party at that time.

The Union's arbitrability arguments are meritless. First, the Union claims that although Vectrus reserved its objections to arbitration as "subject to a motion," the Company never said that its 'motion' was a motion that it would make in court." *See* ECF No. 20 (Response), p. 2. But *First Options* underscores that the standard is whether a party clearly and unreservedly commits to an arbitrability determination in the arbitrator's exclusive discretion, which Vectrus did not do.

---

[1] Even where a party indicates that it would be willing to accept an arbitrator's self-determination that he lacked jurisdiction over such a matter does not repudiate an arbitrability objection or preservation of the issue for ultimate judicial resolution. *See Wang v. Bear, Stearns & Co., Inc.*, CV 09-5731-GHK (CTx), 2009 WL 10675213 (C.D. Ca. Nov. 12, 2009) ("Though Petitioner made clear that she would accept a favorable ruling from the panel, i.e. a finding that they were stripped of jurisdiction under the putative class action provision, we do not think this negates Petitioner's 'objection as to jurisdiction and … express reservation of the question on the record.'").

Further, *George Day Const. Co., Inc. v. United Brotherhood of Carpenters*, 722 F.2d 1471 (9th Cir. 1984) ("*George Day*") does not require that a party use any magic words to preserve its rights in this regard.  For example, in *Barbary Coast Hotel & Casino v. Culinary Workers Union Local 226*, the Court found that the employer properly objected to the arbitrability issue under *George Day* where it "reserved the question of the arbitrator's jurisdiction '<u>for later determination, if necessary</u>.'"  35 F.Supp.2d 765, 768 (D. Nev. 1999) (emphasis supplied).  As a result, "Barbary Coast, even though it submitted the merits of the Whittle grievance to arbitration, specifically objected to the arbitrability issue, and only submitted the merits subject to its objection." *Id*. at 769.

Moreover, courts consider a party's post-arbitration brief when determining whether an appropriate objection has been made concerning arbitrability.  *See, e.g., Wackenhut Servs., Inc. v. United Gov't Sec. Officers of Am., Local 44*, No. CIV.A. 05-0805(JR), 2006 WL 889908, *1 (D.D.C. Mar. 30, 2006) ("That, however, is the only evidence in the record that supports [the employer's] position, and it is seriously undercut by [the employer's] post-arbitration briefs…").[2]

In its post-hearing brief, Vectrus emphasized, citing *George Day* itself: "By asserting that the Arbitrator should not assume jurisdiction over this dispute, the Company is not conceding that the Arbitrator has final, binding authority to determine whether the grievance is substantively arbitrable, and does not waive its right to seek a judicial determination of arbitrability. *See, e.g., Carpenters 46 Northern California Counties Conference Board v. Zcon Buildings*, 96 F.3d 410, 414 (9th Cir. 1996) (holding that "arbitrability, under most circumstances, must be resolved by the court."). Consistent with *George Day*, the Company reserved its right at hearing to have substantive arbitrability determined judicially.  (Tr. 5 - 6).

---

[2]   The Union claims that the parties' post-hearing briefs were not part of the "record" of the arbitration.  *See* ECF No. 20 (Response), p. 3.  Their assertion is squarely contradicted by the Arbitrator's statements in the hearing transcript, which the Union itself quotes in its Response. *See* ECF No. 8 (Answer), Exhibit A, p. 83  ("Can we close the record, Mr. McCracken, or do you want to take a few minutes to look at the stack of papers?"); ("And the record is closed <u>subject to your brief</u>.") (emphasis supplied).

The question of arbitrability is not intended by the Supreme Court to be a land mine. Both at hearing and in its post-hearing brief, Vectrus did <u>not</u> affirmatively invest the Arbitrator with the right to end any further consideration of his jurisdiction -- as *First Options* requires in order to waive a subsequent judicial determination. Indeed, the Company squarely informed the Arbitrator that it was <u>not</u> waiving its rights in this regard.

### B. Arbitration Fundamentally Is A Matter Of Contract, And Only To The Limits Of Any Such Agreement.

Arbitration is a matter of voluntary agreement, and only to the limits of that agreement. *See, e.g., AT&T Tech. Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). Here, the parties did <u>not</u> agree to arbitrate conduct that arose prior to October 25, 2017 -- including both the actions at issue in this matter, and the October 13, 2017 grievance itself.

The Union unconvincingly fails to sidestep this fatal deficiency by -- for the first time -- claiming that the "bridge agreement" is "an integral part of the [collective bargaining] agreement between Vectrus and the Union, which the Arbitrator was charged with interpreting." *See* ECF No. 20 (Response), p. 6.

This argument is without foundation. There is nothing on the face of either the "bridge agreement" or the CBA which purports to incorporate the former into the latter, and the Union cites nothing to the contrary. The "bridge agreement" is merely the document embodying Vectrus' agreement to assume obligations under the CBA at a later date. <u>It is not the CBA itself nor in any way part of it</u>. Nor does it contain any provision subjecting the construction of its meaning to arbitration. Moreover, even by the "bridge agreement's" express provisions, Vectrus' adoption of obligations under the CBA <u>only</u> was to occur on October 25, 2017. The opposite also is true: consistent with the "bridge agreement's" terms, Vectrus was unbound and free to undertake whatever actions it chose before that date, including its initial hiring. And, as the Union concedes,

the hiring at issue in this case occurred prior to October 25, 2017.  *See* ECF No. 20 (Response), p. 4, n. 2.

Thus, even if the "bridge agreement" somehow were part of the CBA, it would not save the Union here.  Not only is it indisputable that the Arbitrator purported to decide a grievance brought prior to when Vectrus agreed to arbitrate <u>any</u> grievance under the CBA, the complained of actions took place before the time when the Company agreed it would be governed by the CBA.  The Union has acknowledged such facts.  *See* ECF No. 20 (Response), p. 5 ("Whether Vectrus was bound by the CBA in retaining employees, <u>in preparation for its October 25 assumption of RSSII operations</u>, is at the very heart of the dispute that the parties submitted to the Arbitrator.") (emphasis supplied).  The Award cannot stand for those reasons alone.  When Vectrus first became bound by the CBA makes all the difference in this case.

The reality is that, as noted, the "bridge agreement" is an instrument separate from the CBA -- and one whose meaning the parties did not agree to arbitrate.  As the Union admits that the Arbitrator construed the "bridge agreement" in rendering his Award, the Award is unenforceable for that reason as well.  *See* ECF No. 20 (Response), p. 6 ("[T]he Arbitrator made reference to and interpreted the Bridge Agreement <u>in addition to</u> the CBA in reaching his decision." (emphasis in original).  Because the Award is inextricably intertwined with interpretation of an agreement other than the CBA, it manifestly does not draw its essence from the CBA.  *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) ("*Enterprise Wheel*") ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement. . . He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.").[3]

---

[3]  There is a fundamental difference between the Arbitrator considering the "law of the shop" or past practices which have <u>arisen between the parties under the contract subject to arbitration</u> (here, the CBA) -- as he is permitted to do -- and grounding the CBA's meaning in that of a separate contract -- which the Arbitrator impermissibly did here.  *[footnote continued on next page]*

That Vectrus observed the Arbitrator "purported" to apply the CBA does not mean that the Arbitrator in fact interpreted "the CBA" -- as opposed to some other agreement of his own making. The Award is unenforceable for the multiple reasons already described above. It has yet another fatal boundary error in that CBA itself is clear that the Arbitrator -- or any arbitrator -- is not empowered to modify its terms. "The arbitrator shall have no power or authority to add to, subtract from, change or alter any terms or provisions of this Agreement." *See* ECF No. 1 (Petition), Exhibit B, Art. 30, Sec. 2 at p. 33.

But the Arbitrator did just that by extending the CBA to periods and actions prior to when Vectrus became a party to it. Purporting to make contractual obligations which only commenced on October 25, 2017 applicable to matters occurring <u>prior</u> to that date is impermissibly modifying the CBA and creating a different agreement. It is not applying "the CBA," regardless of what the Arbitrator may claim.

Article 30, Section 2's "no modification" provisions are central to defining the limits of the Arbitrator's authority and cannot be ignored by him. They are not "boilerplate" as the Union blithely contends. *See* ECF No. 20 (Response), p. 7 ("The 'no add/subtract/change/alter' language that Vectrus relies on is nothing more than 'boiler-plate' that does not limit the arbitrator's remedial powers so long as he does not expressly contravene it."). Quite to the contrary, the CBA's agreed-upon borders may not be expanded or manipulated by any arbitrator. By failing to honor them here,

---

*See, e.g., Hawaii Teamster & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001). Further, that the "bridge agreement" was a joint exhibit at hearing, ECF No. 20 (Response), p. 6 ("Both the Bridge Agreement and the Collective Bargaining Agreement were put in evidence by Vectrus and the Union as <u>joint</u> exhibits."), hardly is tantamount to a grant of authority to base the Award upon it. The "bridge agreement" was part of the parties' course of dealing, and the document embodying Vectrus' agreement to assume obligations under the CBA at a later date. The Company introduced it merely to underscore the fact that per its terms, the Company did <u>not</u> begin to become bound by the CBA until October 25, 2017. *See* ECF No. 1 (Petition), Exhibit C.

the Award "does not draw its essence," *Enterprise Wheel*, 363 U.S. at 597, from the CBA and should not be enforced.

Likewise, neither the Arbitrator nor the Union cite any alleged provision of the CBA affording either of them any role in Vectrus' initial employment hiring. Here, as well, the Arbitrator inappropriately has modified the CBA. The Union's reliance on *Holly Sugar Corp. v. Distillery Union*, 412 F.2d 899 (9th Cir. 1969) in its response is meritless. While the "no modification" provision in *Holly Sugar* is similar to the "no modification" provision in the CBA, there is one major difference. In *Holly Sugar* the no modification provision allowed the Arbitrator to create new job classifications. *See Holly Sugar*, 412 F.2d at 905 ("no arbitrator shall have any power to amend or modify this contract, <u>except that in the event new jobs are created, the arbitrator shall have any power to act</u>…") (emphasis supplied). On that basis, the Ninth Circuit found that this "new jobs" exception to the no modification provision allowed an arbitrator to create a new job classification, "notwithstanding any list of jobs agreed upon by the parties during negotiations." *Id*. Courts have distinguished *Holly Sugar* by explaining: "The *Holly Sugar* court did not consider or rule on the issue of whether an arbitrator exceeds his authority when applying ordinary principles of contract law to a grievance in the context of a 'no-add' provision, and is therefore inapplicable []." *ASARCO, LLC v. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, et al.*, CV-15-117-PHX-SMM, 2016 WL 826762 (D. Ariz. March 3, 2016).[4]

---

[4] This case is not one like *ASARCO* in which the arbitrator's reformation of the no modification provision merely "corrected [a] defect in the written document so that it reflected the true terms of the parties' agreement." *Id*. at *9. There is no evidence of mutual mistake in the record here. Rather, the Arbitrator has rewritten the CBA to require Vectrus to hire certain C. Martin employees prior to the time that the Company agreed to any obligations under the CBA. Moreover, there is no express CBA language referencing hiring -- and the Arbitrator points to none -- which purports to restrict who Vectrus may hire.

### C. The Award Is Contrary To Clear Public Policy.

The Union also has failed to rebut Vectrus' argument that the Award should be vacated as contrary to clear public policy pursuant to the SCA's regulations.

The Union argues that "the CBA's successorship and seniority provisions, which Vectrus contracted to follow, constitute 'other applicable restrictions'" under 29 C.F.R. § 9.12(d)(2). *See* ECF No. 20 (Response), p. 9.

What the Union conveniently eliminates is §9.12(d)(2)'s reference to § 9.1(b), which immediately follows the language "other applicable restrictions." Thus, the entirety of § 9.12(d)(2) states:

> Contractor determines which employees. The contractor, subject to provisions of this part and other applicable restrictions (including non-discrimination laws and regulations), will determine to which employees it will offer employment. See § 9.1(b) regarding compliance with other requirements.

Section 9.1(b) provides:

> Policy. Executive Order 13495 establishes a Federal Government policy for service contracts and their solicitations to include a clause that requires the contractor and its subcontractors under a contract that succeeds a contract for performance of the same or similar services at the same location to offer a right of first refusal of employee to those employees (other than managerial and supervisory employees) employed under the predecessor contract whose employment will be terminated as a result of the award of the successor contract in positions for which the employees are qualified. <u>Nothing in Executive Order 13495 or this part shall be construed to permit a contractor or subcontractor to fail to comply with any provision of any other Executive Order, regulation, or law of the United States</u>.

(emphasis supplied).

Reading these regulations together as intended, it is clear that the "other applicable restrictions" in § 9.12(d) refer exclusively to other executive orders, regulations, or laws of the United States -- and not, as the Union suggests, to matters of contract. Indeed, the Union cites no authority whatsoever for its proposition in this regard.

Vectrus reasonably relied on the SCA's policy in taking on its subcontracting role. Vectrus assumed -- consistent with the above federal regulations -- that it would be entitled to hire its own workforce in its discretion. *See* 29 C.F.R.§ 9.12(d). It acted entirely consistent with that expectation.

The Union concedes that the SCA contemplates such a hiring process. Absent the Award, "the regulations would give Vectrus the right to determine which C. Martin employees to hire for its 'reduced staffing' operations." *See* ECF No. 20 (Response), p. 7.

The Union puts the cart before the horse. Vectrus relied on the SCA regulations in bidding on the RSSII contract, and in extending its employment offers to certain C. Martin employees. Only <u>thereafter</u> did Vectrus become bound by the CBA.[5] To hold otherwise would undermine Vectrus' basic hiring right explicitly codified in 29 C.F.R. § 9.12(d) and make the regulation a complete nullity.

### III.   CONCLUSION.

For the reasons stated above and in its Motion for Summary Judgment, Vectrus requests that the Court grant summary judgment in its favor deny the Union's motion, and vacate the Award. The Union's grievance was not arbitrable; and, even if it somehow could be so, the Award did not draw its essence from the CBA. Further, the Award is contrary to an explicit, well-defined, and dominant

---

[5] This is a critical difference distinguishing the Union's argument with respect to *Data Monitor Systems, Inc.*, 364 NLRB No. 4 (May 31, 2016). The Union ignores that in both *Data Monitor* and here, there was no CBA in effect at the time of the hiring in question.



public policy.  Under these circumstances, a remand to the Arbitrator for further consideration is unwarranted.

    Dated this 9th day of November, 2018.

                              McDONALD CARANO LLP

                    By: */s/    Pat Lundvall*
                          Pat Lundvall (NSBN 3761)
                          Kristen T. Gallagher (NSBN 9561)
                          2300 West Sahara Avenue, Suite 1200
                          Las Vegas, Nevada 89102
                          Telephone: (702) 873-4100
                          lundvall@mcdonaldcarano.com
                          kgallagher@mcdonaldcarano.com

                          Stuart Newman (admitted *pro hac vice*)
                          SEYFARTH SHAW LLP
                          1075 Peachtree Street, N.E., Suite 2500
                          Atlanta, Georgia 30309
                          Telephone: (404) 885-1500
                          snewman@seyfarth.com

                          Kaitlyn F. Whiteside (admitted *pro hac vice*)
                          SEYFARTH SHAW LLP
                          620 Eighth Avenue
                          New York, New York 10018
                          Telephone: (212) 218-5500
                          kwhiteside@seyfarth.com

                          *Attorneys for Vectrus Systems Corporation*

### CERTIFICATE OF SERVICE

    I certify that I am an employee of McDonald Carano, and that on the 9th day of November, 2018, a true and correct copy of the foregoing PETITIONER'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

                          */s/  Beau Nelson*
                          An employee of McDonald Carano LLP