UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| VECTRUS SYSTEMS CORPORATION, | Case No. 2:18-CV-1345 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| TEAMSTERS LOCAL 631, | |
| Defendant(s). | |

Presently before the court is defendant Teamsters Local 631's ("Teamsters") motion for judgment on the pleadings. (ECF No. 15). Plaintiff Vectrus Systems Corp. ("Vectrus") filed a response (ECF No. 18), to which Teamsters replied (ECF No. 20).

Also before the court is Vectrus' motion for summary judgment. (ECF No. 19). Teamsters filed a response (ECF No. 21), to which Vectrus replied (ECF No. 22).

I.    **Facts**

Vectrus initiated this action seeking to vacate Arbitrator Barry Winograd's April 27, 2018, opinion and award in an arbitration between Vectrus and Teamsters. (ECF No. 1).

Teamsters is a labor organization that represents employees providing base operations services at Creech Air Force Base and the Nevada Test and Training Range, both of which are located North of Las Vegas. (ECF Nos. 1, 8). On October 1, 2013, the prime government contractor for employees involved in base operations, PAE, entered into a collective bargaining agreement ("CBA") with Teamsters. (ECF Nos. 1, 1-2, 8). The contract provided that the CBA would expire on September 30, 2017. *Id.*

In the summer of 2017, URS Federal Services, Inc. ("URS") discovered that it would replace PAE on October 25, 2017. (ECF Nos. 1, 8). URS retained Vectrus to provide

employment services in furtherance of base operations.  *Id.*  At roughly the same time, PAE and its subcontractors executed an agreement with Teamsters extending the CBA until September 30, 2018.  *Id.*

On September 26, 2017, URS and Vectrus executed a bridge agreement with Teamsters providing that URS and Vectrus "agree to accept all the terms and conditions of the collective bargaining agreement (CBA)[.]"  (ECF No. 1-3).  The bridge agreement further provides that the contract "will become effective October 25, 2017."  *Id.*  The bridge agreement does not contain arbitration or dispute resolution provisions.  *Id.*

On the same day that URS and Vectrus entered into the bridge agreement, Vectrus extended offers of employment to some but not all the employees of C. Martin—the subcontractor that Vectrus replaced.  (ECF Nos. 1-1, 8, 10).  On October 13, 2017, Teamsters filed a grievance alleging that Vectrus breached the CBA by failing to terminate C. Martin's employees based on seniority or just cause.  (ECF Nos. 1, 1-1, 8).

On February 13, 2018, Vectrus and Teamsters held an arbitration hearing at which Vectrus objected to Arbitrator Winograd's authority to arbitrate Teamsters' grievance regarding Vectrus' hiring practices prior to October 25, 2017.  (ECF No. 8).  On April 27, 2018, the arbitrator held that it had authority to arbitrate the grievance because the CBA was of a continuing nature and the bridge agreement bound Vectrus to the terms of the CBA, including all hiring practices in anticipation of the October 25, 2017, takeover.  *Id.*  The arbitrator also held that Vectrus violated article 28, section 3 of the CBA by not reducing the workforce based on seniority or just cause and ordered Vectrus to reinstate employees in seniority order.  *Id.*

On July 23, 2018, Vectrus filed a complaint petitioning to vacate the arbitration award.  (ECF No. 1).  Now, Teamsters moves for judgment on the pleadings and Vectrus moves for summary judgment.  (ECF Nos. 15, 19).

## II.    Legal Standard

### a.  Judgment on the pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c) are "functionally identical" to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Dworkin v. Hustler Magazine Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989).

In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "[J]udgment on the pleadings is proper 'when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007) (citation omitted). The allegations of the nonmoving party must be accepted as true while any allegations made by the moving party that have been denied or contradicted are assumed to be false. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006).

### b. Summary Judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on

each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.  Discussion

Vectrus argues that the court should vacate the arbitrator's opinion and award because the arbitrator did not have authority to arbitrate Teamsters' grievance.  (ECF No. 19).  The court disagrees.

Arbitration agreements are "simply a matter of contract between the parties; it is a way to resolve disputes . . . that the parties have agreed to submit to arbitration."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  In the context of collective bargaining agreements, courts decide whether a grievance falls within the scope of an arbitration agreement unless the parties "clearly and unmistakably provide otherwise."  *Local Joint Executive Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 595–96 (9th Cir. 2018) (citation omitted) (discussing substantive arbitrability).  In contrast, questions of procedural arbitrability are presumptively for the arbitrator.  *Id*. (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002).

Here, the parties dispute whether the arbitrator had authority to arbitrate Teamsters' grievance.  (ECF Nos. 15, 19).  This is a question of substantive arbitrability as it pertains to the scope of the arbitration agreement.  *See Local Joint*, 911 F.3d at 596.  Thus, the court examines the record to determine whether the parties clearly and unmistakably submitted the question of arbitrability to the arbitrator.  *See id*.

Teamsters filed a transcript of the arbitration proceedings in conjunction with its answer.  *See* (ECF No. 8).  The transcript shows that Vectrus objected to arbitrability subject to a motion.  *Id*.  In a post-hearing brief, Vectrus reiterated its objection by stating:

> By asserting that the Arbitrator should not assume jurisdiction over this dispute, the Company is not conceding that the Arbitrator has final, binding authority to determine whether the grievance is substantively arbitrable, and does not waive its right to seek judicial determination of arbitrability.

(ECF No. 19-3).  These objections preserved the question of arbitrability for the court because they show that the parties did not clearly and unmistakably agree to have the arbitrator determine the arbitrability of Teamsters' grievance.  *See Local Joint*, 911 F.3d at 596.  Under these circumstances, the court must conduct a *de novo* review to determine whether the CBA's arbitration provisions cover the grievance. *See First Options*, 514 U.S. at 943 (holding that when

parties do not agree to submit the question of arbitrability to an arbitrator, the court independently resolves the question).

Courts begin substantive arbitrability inquiries for collective bargaining agreements with a presumption in favor of arbitration. *Local Joint*, 911 F.3d at 596 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). A litigant can overcome this presumption by showing "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Local Joint*, 911 F.3d at 596 (citations and quotation marks omitted).

The CBA provides a procedure in which the parties must handle grievances regarding the interpretation and application of the CBA. (ECF No. 1-2). The final step in this procedure requires the parties to submit grievances to arbitration. *Id*. The CBA remained in effect until September 30, 2018, and Teamsters' filed its grievance against Vectrus before the expiration date. (ECF Nos. 15, 19). Moreover, Teamsters' grievance concerns termination practices that allegedly violated article 28, section 3 of the CBA. *See* (ECF No. 1-1). Teamsters' dispute is precisely the kind of grievance which the relevant arbitration provisions contemplate as it requires interpreting and applying provisions of the CBA.

Vectrus argues that, although the grievance involves interpreting and applying the CBA, it is not subject to arbitration because the underlying acts occurred before Vectrus entered into the CBA. (ECF No. 19). Indeed, on September 26, 2017, Vectrus agreed to be bound by the terms and conditions of the CBA in a bridge agreement, which became effective on October 25, 2017. (ECF Nos. 1-3). Vectrus used the terms of the bridge agreement to undermine the CBA's purpose of ensuring continuous employment for union members by terminating certain employees before the bridge agreement took effect. *See* (ECF Nos. 1, 8). As a result, various union members lost their employment on October 25, 2017, when Vectrus obtained control of employees involved in base operations. *See id*.

Vectrus' trickery is not of the sort which can circumvent provisions of collective bargaining agreements and legal authority that courts must apply. Arbitration provisions of collective bargaining agreements are valid before and after the effective dates of the agreement

when there is a continuing labor-management relationship. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 253 (1977); *see also Poore v. Simpson Paper Co.*, 566 F.3d 922, 927 (9th Cir. 2009).

The CBA and the bridge agreement pertained to a continuing labor-management relationship because union members working in base operations were supposed to remain employed while Vectrus replaced C. Martin as an employer. The most reasonable interpretation of the contracts under these circumstances is that the CBA bound Vectrus before it took effect as applied to Vectrus on October 25, 2017. This interpretation precludes Vectrus from overcoming the presumption in favor of arbitration. *See Local Joint*, 911 F.3d at 596.

Vectrus further argues that the court should vacate the arbitration opinion and award because (1) the award did not draw its essence from the CBA and (2) the award violates public policy under the Service Contract Act's ("SCA") regulations. (ECF No. 19). First, the court's interpretation of the CBA shows that the award properly drew its essence from the CBA. Second, the SCA's regulation prohibits government contractors from filling job openings without first making good faith offers of employment to all qualified employees under the predecessor contract whose employment will be terminated in course of changing contractors. *See* 29 C.F.R. § 9.12(a)(1). Because enforcement of the CBA is consistent with this regulation, the award does not violate public policy.

## IV.    CONCLUSION

The parties properly submitted Teamsters' grievance to the arbitrator because the grievance was within the scope of the arbitration provisions in the CBA. The arbitration award also arose from the CBA and did not violate public policy. Therefore, Teamsters is entitled to judgment on the pleadings.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Teamsters' motion for judgment on the pleadings (ECF No. 15) be, and the same hereby is, GRANTED, consistent with the foregoing.

James C. Mahan
U.S. District Judge

- 7 -

IT IS FURTHER ORDERED that Vectrus' motion for summary judgment (ECF No. 19) be, and the same hereby is, DENIED.

The clerk shall enter judgment accordingly and close the case.

DATED July 25, 2019.

_____
UNITED STATES DISTRICT JUDGE